UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GERALD BYRD et al.,

        Plaintiffs,                  Case No. 1:20-cv-176

v.                                       Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff Smith and Defendants Tagett, Hill, Unknown Part(y)(ies) #1, and Access Corrections for failure to state a claim.

## Discussion

### I.       Factual allegations

Plaintiffs are presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

The events about which they complain occurred at that facility. Plaintiffs sue MDOC employees Director Heidi Washington and Contract Manager Cheryl Groves; LCF employees Lieutenant Unknown Tagett, and trainee correctional officers Unknown Part(y)(ies) #1 and Unknown Hill; and MDOC vendor Access Corrections.

Plaintiffs allege that their music and their Access MP3 music players have been taken from them. Plaintiffs Byrd and Smith each had MP3 players, purchased through Access Corrections, for use in LCF. To add music to their MP3 players, they paid $1.49 per song and used Access MP3 kiosks to transfer their purchased music onto their players. By 2016, Plaintiff Smith had purchased 322 songs, and Plaintiff Byrd had purchased 247 songs, apparently playable only on their Access MP3 players. Plaintiffs allege that, in 2016, after MDOC discontinued its contract with Access, MDOC and Access placed a 10-year expiration on all previous music purchases. After 10 years, the music—and consequently the Access MP3 players—would cease to function.

Plaintiffs further allege that on June 18, 2019, LCF personnel conducted a shakedown and took both Plaintiffs' MP3 players. At the start of the shakedown, Plaintiffs were listening to their MP3 players. They were ordered to leave their devices and exit the unit. Plaintiffs allege that they were able to identify that Defendants Tagett and Hill were among the LCF staff who conducted the shakedown of Plaintiffs' unit. When Plaintiffs returned after the shakedown, their devices were gone. From other prisoners, Plaintiffs learned that the MP3 players had been removed before the first two prisoners returned to the unit. Assistant Residential Unit Supervisor Beaman (not a defendant) explained to Plaintiffs that some MP3 players were taken because corrections officers could not power on the devices during the shakedown. Beaman told Plaintiffs that their devices would be returned in the subsequent days. However, Plaintiffs never

received their MP3 players.  In September 2019, Plaintiffs each filed claims for the loss of their MP3 players and downloaded songs with the State Administrative Board.  The State Administrative Board denied both claims on February 3, 2020.

Plaintiff Byrd further alleges that, because his MP3 player has been taken, his religious exercise has been burdened.  Plaintiff Byrd alleges that he practices the Ifa religion.  Plaintiff Byrd alleges that, "[c]entral to Ifa practice is, invocation of the Divine Messenger deity called 'Esu.'  Esu is invoked through praise songs called oriki."  (Compl., ECF No. 1, PageID.7.)  "[C]orrect tone, pitch and pronunciation of the Yoruba words of the oriki is necessary to strengthen the invocation."  (*Id.*, PageID.12.)  Among the music Plaintiff Byrd had on his MP3 player was an oriki praise song by Ella Andall.  Before his MP3 player was taken, Plaintiff Byrd listened to Ella Andall's song every time he invoked Esu.  Now, Plaintiff Byrd is unable to invoke Esu by listening to oriki.  Plaintiff Byrd asserts that he has requested JPay Media, MDOC's new vendor, add oriki to their music catalog, but JPay has not added any to date.  Consequently, Plaintiff Byrd alleges that he "has not alternative means of utilizing oriki songs for invoking Esu."  (*Id.*)

Plaintiffs allege both that their MP3 players were taken from them and that their music was set to expire in 10 years, without compensation or due process in violation of the Fourteenth Amendment.  Plaintiff Byrd further alleges that his oriki praise songs have been taken from him and not replaced, in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Plaintiffs seek compensatory damages of $1000, punitive damages of $5000 against each Defendant, declaratory relief, injunctive relief, and any other relief the Court deems appropriate.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Statute of Limitations

Plaintiffs allege that, in 2016, after they had purchased hundreds of songs, their music purchases were set to expire after 10 years thus depriving them of their property without due process.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiffs' claims are untimely. They assert claims arising sometime in 2016. Plaintiffs had reason to know of the "harms" done to them at the time they occurred. Hence, their claims accrued in 2016. However, they did not file their complaint until February 2020, well past Michigan's three-year limit.

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

5

Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

Nor does Plaintiffs' pursuit of state administrative remedies toll the running of the statute of limitations for this claim. Normally, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). However, Plaintiffs assert that they sought administrative remedies for the loss of the MP3 players, not for the expiration of their music. Consequently, the running of that statute of limitations was not tolled on this claim. Accordingly, Plaintiffs' claim will be dismissed.

## IV. Taking without Due Process

Plaintiffs further allege their Fourteenth Amendment due process rights have been violated because their MP3 players have been taken without compensation.

Plaintiffs' due process claims related to the loss of their MP3 players are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because

6

Plaintiffs' claims are premised upon allegedly unauthorized acts of a state official, they must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiffs have not sustained their burden in this case. Plaintiffs have not alleged that state post-deprivation remedies are inadequate. Instead, Plaintiffs allege only that the state post-deprivation remedies they have pursued thus far have not resulted compensation. However, the Due Process Clause guarantees a fair procedure; it does not guarantee a specific result. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990). Moreover, numerous state post-deprivation remedies are available to Plaintiffs. Aggrieved prisoners may indeed submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). But that is not the only remedy available. A prisoner who incurs a loss through no fault of his own may also petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiffs do not allege any reason why a state-court action would not afford them complete relief for the deprivation, either negligent or intentional, of their personal property. Accordingly, Plaintiffs' due process claims will be dismissed.

## V. RLUIPA

Plaintiff Byrd alleges his practice of Ifa has been burdened because the loss of his MP3 player has meant that he does not have the access to his oriki praise songs, and the new vendor, JPay, does not have oriki in its media catalog.

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

Upon initial review, the Court concludes that Plaintiff Byrd's allegations are sufficient to state an RLUIPA claim against Defendants Washington and Groves.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Tagett, Hill, Unknown Part(y)(ies) #1, and Access Corrections will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiffs due process claims will also be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). As a consequence, the Court will also dismiss Plaintiff Smith. Plaintiff Byrd's RLUIPA claim remains in the case.

An order consistent with this opinion will be entered.

Dated: April 7, 2020            /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge